# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1345 | **DATE** | 3/22/2004 |
| **CASE TITLE** | McDonald's Corp vs. James | | |

**MOTION:**   [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies James' motion for reconsideration and to stay further proceedings (28-1,2). It is clear from the events since our 02/2003 order that James does not intent to pursue her claim in arbitration. She is therefore directed to file a written submission by 3/29/04, showing why her case should not be involuntarily dismissed due to her failure to pursue her claim in arbitration.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | MAR 2 5 2004 | | |
| ✓ | Docketing to mail notices. | | date docketed | | 22 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| OR | courtroom deputy's initials | | MAR 2 5 2004 date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE McDONALD'S CORP. | ) | **Case No. 02 C 1345** |
| PROMOTIONAL GAME LITIGATION | ) | **(MDL No. 1437)** |
| --------------------------------------------------------- | ) | |
| | ) | |
| **LINDA JAMES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 02 C 2791** |
| | ) | |
| McDONALD'S CORP.; ANTE ENTERPRISES, ) | | |
| LLC; and SIMON MARKETING, INC., | ) | |
| | ) | |
| **Defendants.** | ) | |



DOCKETED

MAR 2 5 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Linda James filed suit in the Western District of Kentucky against McDonald's Corp.,

Simon Marketing, Inc., and Ante Enterprises, LLC, the owner of a McDonald's restaurant in

Franklin, Kentucky. James claimed that in May 2001, she received from the restaurant what she

contended was a million-dollar winning ticket in the McDonald's chain's "Who Wants To Be A

Millionaire" promotional contest. When she claimed her prize, James was told to send the ticket

to a redemption center. After she did this, James was advised that security codes on the ticket

revealed that it was a five-dollar winner at best. McDonald's declined to redeem the ticket

because it was severely damaged and sent James a five-dollar gift certificate. James sued for

breach of contract, unjust enrichment, and consumer fraud under a Kentucky statute.

James' action was transferred to this Court pursuant to 28 U.S.C. § 1407(a) as part of the

*In re McDonald's Corp. Promotional Game Litigation* multi-district proceeding. On February 4,

2003, the Court granted the defendants' motion to compel arbitration of James' claims based on a provision of the contest rules that required all disputes connected with the contest to be submitted to arbitration. *See* Order of Feb. 4, 2003. In that order, the Court rejected James' arguments that she had not seen the contest rules and that arbitration should not be ordered because it would be cost-prohibitive. The Court also ruled that James' claim of fraud in the inducement had to be presented to the arbitrator.

The Court's order stayed the case pending arbitration and "directed [plaintiff] to submit her claim to arbitration if she wishes to pursue the claim." *Id.* James did not proceed to arbitration. At a status hearing held in early August 2003, her counsel told the Court that James could not afford to advance the arbitration costs and thus had not initiated arbitration. In a telephone conference among counsel and the Court held on December 15, 2003, James' counsel said that James still had not proceeded to arbitration, for the same reason cited earlier. Counsel asked the Court to transfer the case back to the Western District of Kentucky. When the Court asked why, counsel said he wanted to file in the transferor district a motion for reconsideration of this Court's February 2003 ruling compelling arbitration. The Court replied that this would effectively defeat the purpose of the multi-district litigation process and declined counsel's oral motion to transfer. James did not thereafter seek reconsideration of this oral ruling, and she did not file a written motion supporting her request for return of the case to the transferor district.

In the same telephone conference, the Court set a deadline of January 15, 2004 for James to file any requests for reconsideration. *See* Order of Dec. 15, 2003 (which contains a typographical error referring to the Court's ruling regarding "remand," which should have been a reference to the ruling regarding arbitration). James did so, filing a motion that restated the

2

arguments that the Court had rejected in February 2003. The motion is now ripe for ruling.

James' motion is denied, first, because it is untimely. As indicated above, the motion rehashes the same arguments that James made in opposing arbitration to begin with. Her request for reconsideration could have and should have been made promptly after the Court granted the motion to compel arbitration. James is not entitled to forego arbitration, wait nearly a year, and only then seek reconsideration. (If she disagreed with the Court's ruling, she could have asked the Court to certify its ruling for appeal under 28 U.S.C. § 1292(b), but she did not do so.)

Even if James' motion is considered timely, it is without merit. Her first argument is that arbitration is cost-prohibitive. In this regard, she says nothing new or different from what the Court considered at the time of its February 2003 ruling. In that ruling, the Court pointed out that the cases upon which James relied concerned preservation of a party's ability to pursue federal statutory claims. James had cited no authority supporting the proposition that prohibitive costs warranted ignoring an agreement to arbitrate state-law claims. The same is true of her motion for reconsideration; she has made no effort to challenge the Court's earlier ruling in this regard. The issue is waived.

James also attacks the particulars of an offer McDonald's made to pick up arbitration costs if James agreed to limit her damages. The short answer to this is that the Court did not rely on McDonald's offer in any way in its earlier ruling.

James' primary argument is that McDonald's failed to prove that James was actually party to a contract requiring arbitration, and that she is entitled to a jury trial on that point under 9 U.S.C. § 4. The cases James cites, however, make it clear that section 4 requires a trial on the question of the existence of an agreement to arbitrate only if there is a genuine factual issue as to

the existence of a contract. *See Tinder v. Pinkerton Security,* 305 F.3d 728, 735 (7th Cir. 2002); *ASW Allstate Painting & Const. Co. v. Lexington Ins. Co.,* 188 F.3d 307, 311 (5th Cir. 1999). Here there is none. James submitted affidavits which collectively indicate that she purchased the food item that contained the purported winning ticket (a carton of french fries, *see* Cplt., Ex. A) at a drive-up window and did not see the contest rules. That is not enough in this case to create a genuine issue of fact. McDonald's affidavits, submitted in opposition to the motion to reconsider, reflect not only that the contest rules were posted at the store but also that the french fry cartons with game cards all contained the following statement on the outside of the carton: "See Official Rules at participating McDonald's for details, including odds, prizes, ARVs, dates, and how to obtain a Game Card by mail." On the inside of the carton a similar message appeared that also referred the customer to McDonald's web site for a copy of the rules.

James has not contradicted the factual showing made by McDonald's that the french fry carton that contained her game piece made specific reference to the contest rules and told her what she needed to do to review them. Her only contention is that she did not actually see the rules. Under the circumstances, this amounts to a claim that she did not read the rules even though they were clearly and undisputedly identified to her as being part of the contract.

James contends that Kentucky law requires actual knowledge of the existence of an arbitration requirement before such a requirement can be enforced. Under the Federal Arbitration Act, when deciding whether the parties have agreed to arbitrate, a court applies ordinary state-law principles that govern contract formation. *E.g., First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 994 (1995).

But the state-law rules that apply are those that concern generally-applicable contract law

principles, not those that a state may have developed that apply specifically to agreements to arbitrate. Section 2 of the Federal Arbitration Act says that agreements subject to its terms "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of *any contract*." 9 U.S.C. § 2 (emphasis added). "A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2," and thus it cannot be used to invalidate the arbitration provision. *Perry v. Thomas,* 482 U.S. 483, 492 n.9 (1987). In short, in assessing a litigant's right to enforce an arbitration agreement, a court may not "construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." *Id.* Thus to the extent Kentucky may have a requirement that a person cannot be subjected to an arbitration requirement unless it is physically shown to her and she specifically agrees to it, that requirement does not apply under the Federal Arbitration Act.

James appears to contend that Kentucky's generally-applicable "meeting of the minds" requirement bars enforcement of the arbitration provision in this case because James did not see it. As the Court indicated in its February 2003 ruling, we disagree. James' proposed construction of the law would permit a contracting party to avoid a material term simply by turning her head when it is shown to her. James has cited no Kentucky cases that support such a rule. To the contrary, it has long been clear under Kentucky law that a party's failure to read a contract is of no legal consequence. *See Merten v. Vogt,* 208 S.W.2d 739, 740 (Ky. App. 1948), and *Louis P. Hyman & Co. v. United States Cast Iron Pipe & Foundry Co.,* 9 S.W.2d 226, 226 (Ky. App. 1928), both of which were cited in our February 4, 2003 order. *See also, e.g., Grisgby v. Mountain Valley Ins. Agy., Inc.,* 795 S.W.2d 372, 374 (Ky. 1990); *Cline v. Allis-Chalmers*

*Corp.,* 690 S.W.2d 764, 766 (Ky. App. 1985). Finally, as McDonald's points out, it is well

established in the law of sweepstakes and similar contests that the offer, which includes the

contest rules and conditions, limits the contract. *See, e.g., Workmon v. Publisher's Clearing

House,* 118 F.3d 457, 459 (6th Cir. 1997); *Johnson v. BP Oil Co.,* 602 So. 2d 885, 888 (Ala.

1992); *Estlow v. New Hampshire Sweepstakes Comm'n,* 449 A.2d 1212, 1213 (N.H. 1982).

For these reasons, the Court denies James' motion to reconsider our February 4, 2003

order. In her motion, James asks the Court, if it denies reconsideration, to convert the February

2003 order to a dismissal so that she can now pursue an appeal from that order. This request

comes far too late in the day. As indicated earlier in this Memorandum Opinion, James took no

steps following the Court's February 2003 order compelling arbitration to carry out that order's

directive, seek reconsideration, or request certification for interlocutory appeal. Our ruling did

not give James the option of foregoing arbitration, waiting nearly a year, asking this Court for

another bite at the same apple, and then reviving for appeal purposes a ruling made more than a

year ago. If James wanted to appeal the February 2003 order, she should have made that request

within a reasonable time after the order was entered.

## Conclusion

For the reasons stated above, the Court denies James' motion for reconsideration and to

stay further judicial proceedings [Case No. 02 C 2791, docket #28-1 & 2]. It is clear from the

events since our February 2003 order that James does not intend to pursue her claim in

arbitration. She is therefore directed to file a written submission within seven days of this order

(by March 29, 2004), showing cause why her case should not be involuntarily dismissed due to

her failure to pursue her claim in arbitration.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   March 22, 2004